UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALTERICK KELLY,                    :
                                   :    Civil Action No. 11-363 (DMC)
                Petitioner,        :
                                   :
           v.                      :    **OPINION**
                                   :
GREG BARTKOWSKI, et al.,           :
                                   :
                Respondents.       :

**APPEARANCES:**

**ALTERICK KELLY**, Petitioner pro se
410037 / SBI220246-C
New Jersey State Prison
P.O. Box 861
Trenton, N.J. 08625

**BARBARA A. ROSENKRANS**, Counsel for Respondents
Essex County Prosecutor's Office
Essex County Courts Building
50 West Market Street
Newark, N.J. 07102

**CAVANAUGH**, District Judge

Petitioner Alterick Kelly ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Warden Greg Bartkowski and the Attorney General of New Jersey. For the reasons stated below, the Petition will be denied.

**I. BACKGROUND**

The facts of this case were recounted below and this Court, affording the state court's factual determinations the

appropriate deference, see 28 U.S.C. § 2254(e)(1)[1], will simply

reproduce the recitation as set forth in the unpublished opinion

of the Superior Court of New Jersey, Appellate Division:

> At approximately 1:00 a.m. on April 29, 1998, Newark
> police officers responded to a report of shots fired in
> the backyard lot of 25 Aster Street.  The bodies of
> Derrick Powell and Jhidoniane Anderson were discovered
> slumped over each other and riddled with multiple gun
> shot wounds.  The bodies were surrounded by spent shell
> casings from three separate weapons: a .38 caliber, a
> .380 caliber and a 9mm.  Officer Johnny Faulkner was one
> of the first at the scene, and he saw drops of blood on
> the ground leading away from the bodies.  He followed a
> trail of blood west on to Murray Street and south on
> Brunswick Street, to a building at 86 Brunswick Street.
> Faulkner then notified the officer in charge, Lieutenant
> James D. O'Connor, of his observations.

> O'Connor testified that he and a team of officers
> followed the fresh blood trail found by Officer Faulkner
> which led to an apartment building, into the foyer and to
> the door at apartment 1A.  Believing that an injured
> person was in the apartment, whether it be a murderer or
> an innocent victim, O'Connor knocked on the door.   A
> woman, later identified as Delfonda Swint, opened the
> door, and O'Connor saw a man, later identified as
> defendant, standing two fee behind her with a black
> pistol in his hand.  One of the other officers pulled
> Swint out of the way, and O'Connor and another officer
> ran into the apartment.  The man holding the gun fled
> further back into the apartment.  O'Connor saw two other
> men in the apartment as he entered.  Later identified as
> co-defendants Deshawn Stith and Stephen Whitley, these
> men were secured by other officers as O'Connor pursued
> the man with a gun into the kitchen.  O'Connor next saw
> the defendant's arm coming down as if he had placed
> something on top of a kitchen cabinet, and he observed
> blood trickling from the cabinet.  When the defendant was
> told to show his hands, he did not do so, holding the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an
application for a writ of habeas corpus by a person in custody pursuant to the
judgment of a State court, a determination of a factual issue made by a State
court shall be presumed to be correct. The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing evidence."

left side of his body.  O'Connor then wrapped his hands around and discovered that defendant was wounded.

After the apartment was secured, a .38 caliber handgun, a .380 caliber handgun, and a 9mm handgun were located on top of the kitchen cabinets.  The suspects were arrested and read their rights.

. . .

At trial co-defendants Stith and Whitley testified for the State after pleading guilty to aggravated manslaughter.  Whitley testified that the killing was Kelly's idea because there was a turf war with the victims and that "either we kill them or they're going to kill us."  He said that all three assailants had a gun and that defendant had the 9mm.  He said that Kelly lured the victims to the back lot and they pulled out the guns at the same time and started shooting.  He said that Kelly was shot accidently during the execution of the two victims.  Whitley's testimony was corroborated by Stith, who said that they all agreed to kill the two victims, and they all participated in the shooting.

Defendant testified in his own defense that he was "just hanging out" drinking with the co-defendants when a patrolman told them to move off of the street.  They went into the back lot where they confronted the victims. Defendant said that Stith had two guns, and Whitley had another.  When the two co-defendants started shooting the victims, defendant said he tried to intervene and was accidently shot.  After the shooting, they all went to Swint's apartment where defendant tried to treat his wound.  When the police entered a few minutes later, he said he did not have a gun in his hand but rather a black cordless phone.

State of New Jersey v. Kelly, A-1744-00T4 (July 5, 2002).

On June 13, 2000, a jury convicted Petitioner of the first-degree aggravated manslaughter of Derrick Powell, N.J.S.A. 2C:11-4a, as a lesser-included offense of murder (count one); the aggravated manslaughter of Jhidoniane Anderson, also as a lesser-included offense of the original charge of murder (count

two); third-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5b (count seven); and second-degree possession of a firearm for unlawful purpose, N.J.S.A. 2C:39-4a (count eight). State v. Kelly, 2009 WL 4725221, at * 1 (N.J. Super. Ct. App. Div. Dec. 10, 2009). Defendant was sentenced on July 28, 2000, to thirty years imprisonment on count one, subject to eighty-five percent parole ineligibility in accord with the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2; twenty years subject to NERA on count two, consecutive to count one; five years imprisonment on count seven, concurrent to count two and consecutive to count one; and ten years with five years of parole ineligibility on count eight, concurrent to count two and consecutive to count one. (Id.) Defendant's direct appeal was denied[2], and his petition for certification was also denied on October 21, 2002. State v. Kelly, 174 N.J. 548 (2002).

After oral argument, Petitioner's petition for post-conviction relief ("PCR") was denied on January 11, 2008. The Appellate Division affirmed this denial on December 10, 2009. State v. Kelly, 2009 WL 4725221 (N.J. Super. Ct. App. Div. Dec. 10, 2009). On December 21, 2010, Petitioner submitted the instant habeas petition to prison officials for mailing. (Docket Entry No. 1.) He raises the following grounds for relief:

---

[2] The Appellate Division did vacate the sentence imposed on Count Eight and remand to the trial court for entry of an amended judgment of conviction reflecting a merger of that charge. State of New Jersey v. Kelly, A-1744-00T4 (July 5, 2002).

4

1. The state court's ruling that Petitioner was not
subjected to the deprivation of his Sixth Amendment
constitutional right to effective assistance of trial
counsel by his failure to object to the trial court's
failure to recharge the jury on accomplice liability when
the court recharged the jury pursuant to its request on
murder and the lesser-included offenses to murder on
several occasions, was contrary to clearly established
federal law, and an unreasonable application of federal
law.

2. The state court's ruling that Petitioner was not
subjected to the deprivation of his due process right to
a fair trial when the state elected to try Petitioner as
an accomplice to a 1st degree murder for which it made
clear to the jury that the two co-defendants were the
principles [sic] that pled guilty to aggravated
manslaughter, the Petitioner's starting offense as an
accomplice should have been aggravated manslaughter
rather than 1st degree murder which was an offense
greater than the actual principles [sic] offense, was
contrary to clearly established federal law, and an
unreasonable application of federal law.

3. The state court's ruling that Petitioner was not
subjected to the deprivation of his Sixth Amendment
constitutional right to effective assistance of trial
counsel by his failure to request that the jury be
instructed that the co-defendants' pleas could not be
used as substantive evidence against Petitioner was
contrary to clearly established federal law, and an
unreasonable application of federal law.

4. The state court's ruling that Petitioner was not
subjected to the deprivation of his Sixth Amendment
constitutional right to effective assistance of trial
counsel by his failure to ensure Petitioner's presence at
an in-camera voir dire hearing of a juror, and by failing
to request that the other jurors be voir dired as to
improper influences, was contrary to clearly established
federal law, and an unreasonable application of federal
law.

5. The state court's ruling that Petitioner was not
subjected to the deprivation of his Sixth Amendment
constitutional right to effective assistance of trial
counsel by his failure to utilize information he had as
his disposal at the suppression hearing to establish that

the police had falsified the exigent circumstances to justify their entry into the house where weapons were seized and the Petitioner was arrested in violation of the Fourth Amendment, was contrary to clearly established federal law, and an unreasonable application of federal law.

6.  The state court's ruling that Petitioner was not subjected to the deprivation of his Sixth Amendment constitutional right to effective assistance of trial counsel by his failure to object to the admission of testimony that both co-defendants's pleas were conditioned on truthful testimony at trial, and the prosecutor's improper vouching for the credibility of the co-defendants was contrary to clearly established federal law, and an unreasonable application of federal law.

7.  The state court's ruling that Petitioner was not subjected to the deprivation of his Sixth Amendment constitutional right to effective assistance of trial counsel by his failure to request that the jury be instructed on the unreliable nature of testimony attesting to oral statements made by Petitioner was contrary to clearly established federal law, and an unreasonable application of federal law.

8.  The state court's ruling that Petitioner was not subjected to the deprivation of his Sixth Amendment constitutional right to effective assistance of appellate counsel by his failure to raise the claims raised herein, was contrary to clearly established federal law, and an unreasonable application of federal law.

9.  The state court's ruling that Petitioner was not deprived of his Sixth and Fourteenth Amendment constitutional rights by the trial court's amendment of the indictment where he changed the charging terms of the indictment as returned by the grand jury without notice on Petitioner was contrary to clearly established federal law, and an unreasonable application of federal law.

10.  The cumulative effect of trial counsel's many deficiencies deprived the Petitioner of effective assistance of counsel.

11. The sentence imposed on Petitioner by the trial judge was contrary to the clearly established federal precedent set forth in <u>Blakely v. Washington</u>.

(Pet, Docket Entry No. 1.) Respondents filed an answer,

arguing that Petitioner has not met his burden for the writ to

issue and Petitioner filed a reply. (Docket Entry Nos. 15 & 21.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in

pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted

the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence...

28 U.S.C. § 2254.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule

from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.

To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999). Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 606 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, *6 n. 4 (D.N.J. 2000). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and

9

mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Appel, 250 F.3d at 210.

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

B.  Analysis

1. Ineffective Assistance of Counsel

In Grounds 1, 3, 4, 5, 6, 7, 8 and 10, Petitioner raises claims of ineffective assistance of counsel.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011)(citing Strickland, 466 U.S. at 690, 104 S.Ct. 2052).  "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'"  Id. (citing Strickland, 466

11

U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding'...Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S.Ct. 770, 788 (2011)(citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the

unaffected findings as a given, and taking due account of
the effect of the errors on the remaining findings, a
court making the prejudice inquiry must ask if the
defendant has met the burden of showing that the decision
reached would reasonably likely have been different
absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address
both components of an ineffective assistance claim "if the
defendant makes an insufficient showing on one." Strickland, 466
U.S. at 697. "If it is easier to dispose of an ineffectiveness
claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed." Id.

## a.  Re-Charge on Accomplice Liability

In Ground One of his petition, Petitioner alleges that he
was deprived of effective assistance of trial counsel due to
counsel's failure to object to the court's failure to re-charge
the jury regarding accomplice liability when it re-charged the
jury on murder and the lesser-included offenses pursuant to the
jury's request.  Petitioner argues that the trial court had an
obligation to re-charge the jury on accomplice liability when the
jury requested to be re-charged on first degree murder and its
lesser-included offenses.

Petitioner presented this claim in his PCR petition and in
affirming the trial court's denial, the Appellate Division
stated:

13

Under the familiar test on a claim of ineffective
assistance of counsel, a defendant must first demonstrate
that counsel's performance "fell below an objective
standard of reasonableness." Strickland v. Washington,
466 U.S. 668, 687-88, 104 S. Ct .2052, 2064, 80 L. Ed.2d
674, 693 (1984). Second, a defendant must demonstrate
"there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694, 104
S.Ct. at 2068, 80 L. Ed.2d at 698. Without establishing
a prima facie case of ineffective assistance of counsel,
there is no entitlement to a PCR evidentiary hearing.
State v. Preciose, 129 N.J. 451, 462, 609 A.2d 1280
(1992); State v. Cummings, 321 N.J.Super. 154, 169-70,
728 A.2d 307 (App. Div.), certif. denied, 162 N.J. 199,
743 A.2d 852 (1999).

At the close of the trial, the judge gave the Model Jury
Charges on murder, aggravated manslaughter, reckless
manslaughter, possession, and accomplice liability, among
other things. During the first day of deliberations, the
jury sent a note asking to be recharged on murder,
aggravated manslaughter, reckless manslaughter and
possession. The trial court asked the foreperson, after
conferring with counsel, if the panel wanted the complete
instructions reread or merely the essential elements of
each offense. The foreperson responded that they wanted
to hear the entire instructions. The court therefore
recharged the jury as they requested, and also recharged
as to intoxication, as the judge opined that the
intoxication instruction was inextricably intertwined
with the homicide instructions and the varying mental
states necessary for each offense.

To reiterate, before he administered the instructions
again, the judge asked the foreperson to confirm his
interpretation of the note. After he reinstructed the
panel, the judge asked for confirmation that the
instructions he had just given were what they had asked
to hear. The foreperson answered "yes."

Defense counsel did not request the court to repeat the
accomplice liability instruction. Defendant now claims
this failure of trial counsel to do so, and the failure
of appellate counsel to raise this omission on appeal,
constitutes ineffective assistance of counsel.

"When a jury requests clarification," a judge must "clear

14

the confusion." <u>State v. Conway</u>, 193 N.J.Super. 133, 157, 472 A.2d 588 (App. Div.), <u>certif.</u> <u>denied</u>, 97 N.J. 650, 483 A.2d 174 (1984). The court is obliged to determine the meaning of any ambiguous request. <u>State v. Graham</u>, 285 N.J.Super. 337, 342, 666 A.2d 1372 (App.Div. 1995). In this case, the judge did precisely that-he clarified his understanding of the jury's note orally prior to the recharge and confirmed that they were satisfied to continue deliberations without further instructions after the recharge.

Erroneous jury instructions "are poor candidates for rehabilitation under the harmless error theory." <u>State v. Weeks</u>, 107 N.J. 396, 410, 526 A.2d 1077 (1987). Therefore, defendant contends, the court committed harmful error by failing to remind the jury that even if a principal is guilty of purposeful murder an accomplice can be found guilty of a lesser crime. In other words, that the accomplice liability instruction should have been given anew.

In our view, defendant's reliance on <u>State v. Harrington</u>, 310 N.J.Super. 272, 278, 708 A.2d 731 (App. Div.), <u>certif.</u> <u>denied</u>, 156 N.J. 387, 718 A.2d 1216 (1998), in support of this contention, is misplaced. <u>Harrington</u> requires a jury to be instructed that it can find a principal and an accomplice guilty of different degrees of the same crime or of different crimes altogether. <u>Ibid.</u> It is undisputed that the judge gave that instruction as part of his comprehensive closing charge. It is also undisputed that the jury did not ask to hear the instruction again.

There is no requirement, nor should there be, that a judge reread all instructions previously administered to a jury when the jury requests specific charges be read to them. <u>State v. McClain</u>, 248 N.J.Super. 409, 421, 591 A.2d 652 (App. Div.), <u>certif.</u> <u>denied</u>, 126 N .J. 341, 598 A.2d 897 (1991). The fact that the jury did not ask implies that they understood; to assume otherwise is unfounded speculation. As we said in <u>McClain</u>, "[t]he failure of the jury to ask for further clarification or indicate confusion demonstrates that the response was satisfactory." <u>Ibid.</u> Indeed, it would not have been appropriate for the judge to have recharged accomplice liability sua sponte. <u>See</u> <u>State v. Perry</u>, 124 N.J. 128, 162-64, 590 A.2d 624 (1991). There was no basis for trial counsel to make the request or for appellate

counsel to raise this argument on appeal. In addition,
defendant does not even suggest the impact this would
have had on the outcome, particularly where he was found
guilty of the lesser offense and not of murder.

State v. Kelly, 2009 WL 4725221, at * 2-3 (N.J. Super. Ct. App.

Div. Dec. 10, 2009).

The trial court and the Appellate Division both reviewed

trial counsel's assistance with regard to this issue pursuant to

the Supreme Court's holding in Strickland and both courts founds

that it was not ineffective assistance for trial counsel not to

object to the trial court's failure to re-charge the jury

regarding accomplice liability when their question to the judge

did not pertain to accomplice liability. The Appellate Division

also found that Petitioner did not meet the prejudice prong of

Strickland. Petitioner has not demonstrated that the actions of

the state courts "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United

States" or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Therefore, this ground

for habeas relief is denied.

## b. Co-Defendants' Pleas and Testimony

In his third ground for relief, Petitioner argues that it

was constitutional error for trial counsel not to request that

the jury be instructed that his co-defendants' pleas could not be

16

used as substantive evidence against Petitioner.

The Appellate Division stated the following when addressing this issue, on appeal from the trial court's denial of PCR:

> Defendant also contends that counsel was ineffective because he did not request an instruction as to the proper use of the co-defendants' testimony. To the contrary, as the State points out in its brief, the judge told the jury:
>
>> Also on the subject of credibility of the witnesses, in this case evidence has been introduced to show that certain witnesses currently have testified pursuant to plea agreements that are now in effect under which they pled guilty to lesser charges, await sentences and dismissal of certain other charges. In criminal trials when a witness takes the witness stand to testify the fact that he has such an agreement or charges pending against him or a sentence being awaited or charges to be dismissed is permitted to be placed before the jury for your consideration, not for the general credibility to be given to the testimony of that witness, but only to evaluate whether or not the witness has testified the way he did in hopes or consideration of getting favorable treatment from the State in connection with the pending charges or pending plea agreement.
>>
>> Now, each of the other two defendants named in all of the counts of the indictment 1 through 9 ... that are on trial here, that is Stephan Whitley and [DeShawn] Stith, each has admitted his guilt and has testified on behalf of the State. I remind you that each has admitted guilt to the offense of aggravated manslaughter rather than the offense of murder. The law requires that the testimony of such a witness be given careful scrutiny. In weighing his testimony, therefore, as to each of them you may consider whether he has a special interest in the outcome of the case and whether his testimony was influenced by the hope or expectation of any favorable

treatment or reward or any feelings of revenge or reprisal. If you believe that the particular witness is credible and worth[y] of belief then you have a right to find the defendant guilty on the testimony of the witness alone provided, of course, that upon a consideration of the whole case you are satisfied beyond a reasonable doubt of the defendant's guilt.

. . . .

You are not to be affected by the fact that another defendant has pled guilty to a particular count or a particular charge. That does not bear upon the issue of whether this defendant is guilty or not guilty. So you're not to be affected by that in making your determination as to whether or not this defendant is not guilty or guilty of any offense in this case.

The court's recitation of the model charge did inform the jury that the fact that Stith and Whitley had entered guilty pleas had no bearing on the issue of the guilt of defendant. Since the record does not bear out defendant's assertion, we will not consider this issue further. R. 2:11-3(e)(2).

State v. Kelly, 2009 WL 4725221, at * 3-4 (N.J. Super. Ct. App. Div. December 10, 2009). The PCR court and Appellate Division determined that the jury was informed of the fact that the entry of guilty pleas by his co-defendants has no bearing on the guilt or innocence of the Petitioner. As such, Petitioner's claims to the contrary had no merit. This Court finds that Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determinated by the Supreme Court of the United States" or

"resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."  Therefore, this ground for habeas

relief is denied.

## c.  Presence at Voir Dire of Deliberating Juror

In his fourth ground for relief, Petitioner argues that it

was a violation of his Sixth Amendment right to effective

assistance of trial counsel when counsel failed to ensure that

Petitioner was present at an in-camera voir dire of a juror who

had come to the judge and expressed a desire to be released from

the jury.  The judge, defense counsel, prosecutor and juror were

present at the conference.  However, Petitioner alleges that he

was not present at the hearing and he did not waive his right to

be present at the hearing.  Further, Petitioner alleges that

counsel should have requested that the other jurors be voir dired

to determine if the juror had improperly influenced them.

Petitioner raised this claim in his PCR petition.  In

denying this ground, the Court stated:

> The belated expression or desire on the part of Mr. Kelly
> to be present during the examination of the juror in
> camera certainly is understandable in light of the recent
> cases such as State v. W.A., et cetera.  But what has to
> be clear in those cases is that, even there, that
> requires a request on the part of the defendant.  There
> was no such request made here.  Indeed, that wasn't the
> law at the time.  And the method that was used at the
> time in this case was a method that, even in the face of
> such a request, is a method that is continued to be

treated as an appropriate method for communication with a defendant and achieving the defendant's presence through that form of shuttle communication.

An examination of a juror may very well be intimidating to the juror, especially a juror who is already coming to the Court expressing some concerns. And there is no basis here for believing that that sort of a situation should have been created either by request of the defense, or by instance on the part of the Court.

The juror was expressing concern in large part. The Court was cautious not to interfere or intrude into deliberations. And some of the suggestions that are made here in the briefs, and even in argument, would imply that Mr. Kelly thinks that this Court should have in some way intruded into deliberations. That would be contrary to the integrity of the trial and to the duty of counsel and the Court. So on no basis is that appropriate.

And the comment that Mr. Kelly is the boss; I understand what Mr. Henry means by that. By there are professional decisions that attorneys make in the course of a trial that a defendant or defendants would rely upon. And when the case is over with and they're unhappy with the result, then they want to go back and second guess. It's Monday morning quarterbacking.

At the time that the decisions were made, there was no expression on the part of Mr. Kelly or otherwise with any - of any dissatisfaction with the manner in which Mr. Feinberg was conducting the trial or proceedings concerning the voir dire of that juror.

Furthermore, that voir dire was not part of jury selection in the sense that has been often referred to in the recent cases, but was a particularized problem where it might very well be that a juror would feel intimidated, singled out, and made uncomfortable by having a defendant present. And there may well have been reasons such as that. It's reasonable to believe that Mr. Feinberg may have made that determination. It would be a reasonable determination, and his acting in that manner, his conduct in that matter is not a deviation from a proper professional standard that would in some way be beyond what is appropriate for an attorney conducting such a matter and rendering that view of a version of ineffective assistance of counsel, nor can

that in any way be demonstrated to have had a prejudicial
impact on the outcome of this trial.

(Resp't's Br., Ex. 36, PCR Hr'g Tr. 25:1-27:10, Jan. 11, 2008.)

The state PCR court properly reviewed the conduct of
Petitioner's trial counsel and found that it was not objectively
unreasonable.  Further, Petitioner had not shown prejudice from
the allegedly ineffective conduct.  Petitioner has not
demonstrated that the actions of the state courts "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determinated
by the Supreme Court of the United States" or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  Therefore, this ground for habeas relief is denied.

## d.  Suppression Hearing

In Ground Five of his petition, Petitioner argues that it
was a violation of his Sixth Amendment right to effective
assistance of trial counsel when his attorney failed to utilize
information he had at his disposal during the suppression hearing
to show that the police had falsified the exigent circumstances
to justify their entry into the house.

In denying Petitioner relief on this ground, the PCR court
stated the following:

The defense also appears to have raised a question as to
the handling of the evidence in the motion to suppress
proceeding.  It's very clear that the motion to suppress

21

hearing demonstrated in the evidence that there was sufficient exigent circumstance to warrant going to that apartment. There was a blood trail from the scene of the shooting directly to the apartment door. It was unavoidable, inescapable that the police would have to make inquiry there at the time that they did in the immediate aftermath of the shooting. There justifiably was concern for the safety and protection of anyone who might be in that apartment, be it a defendant, another victim, another injured party, there having been two shootings in the immediate vicinity. There's obvious bleeding.

The knock on the door was appropriate on the part of the officers. When the door was opened and the officers observed this defendant with a gun in hand, in light of the shootings, they were totally justified in rushing in to disarm him. At that point, with all that they had, it would have been derelict on their part to have done less.

The argument that DNA testing demonstrating that this was the defendant's blood should have been advanced at the motion to suppress hearing is a specious argument. At the time that the police observed the blood, whose blood it was, what the DNA might show later, was not in any way material to what was taking place and the action the police were engaged in. No matter whose blood it was, no mater what DNA might show later, it was incumbent upon those officers to follow the trail of that blood and to make sure that anyone who was injured or was still in danger received proper treatment, or, if it was someone that needed to be apprehended, to take that action as well, as, indeed, they did.

There's no reasonable argument to be made that there was any deficiency in the conduct of the proceedings on the part of Mr. Feinberg or any other counsel because they didn't bring out the results of DNA testing at the motion to suppress proceeding. I'm hard pressed at this time to believe that I would have permitted it.

(Resp't's Br., Ex. 36, PCR Hr'g Tr. 27:25-29:17, Jan. 11, 2008.)

The state PCR court properly reviewed the conduct of

Petitioner's trial counsel and found that it was not objectively

unreasonable with regard to the suppression hearing.  The court found that it was appropriate for the police to knock on the apartment door based on the trail of blood leading to the apartment door, regardless of whether it was Defendant's blood or the blood of some other potential victim.  Therefore, the court found, it was not deficient of trial counsel not to raise the results of any DNA testing at the suppression hearing. Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Therefore, this ground for habeas relief is denied.

### e.  Prosecutor's Comments

In Ground Six of the petition, Petitioner argues that he was deprived effective assistance of trial counsel when his attorney failed to object to the prosecutor's comments that Petitioner's co-defendants' pleas were conditioned on truthful testimony at trial.

Petitioner argues that in his summation at trial, the prosecutor improperly told the jury that the co-defendants were given a deal "in exchange for truthful testimony" and that the

23

prosecutor had "vouched" for co-defendants' credibility; as such, it was ineffective assistance of counsel for Petitioner's trial counsel not to object to said comments.

Petitioner has not met either prong of <u>Strickland</u>. Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness. Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. <u>Darden v. Wainwright</u>, 477 U.S. 168, 182 (1986); <u>Donnelly</u>, 416 U.S. at 644; <u>Moore v. Morton</u>, 355 F.3d 95, 111 (3d Cir. 2001). Petitioner has not shown that the comments by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly</u>, 416 U.S. at 643.

Moreover, Petitioner has not alleged, let alone shown, that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Strickland</u>, 466 U.S. at 695. As such, this ground for habeas relief is denied.

## f. Petitioner's Oral Statements

In Ground Seven of his petition, Petitioner argues that he

24

was deprived of effective assistance of counsel when his trial counsel did not request that the jury be instructed on the "unreliable nature of testimony attesting to oral statements made by the Petitioner." Specifically, Petitioner argues that his attorney should have objected to co-defendant Whitley's statement that Petitioner said "I know them so either we kill them or they're going to kill us."

Even if this Court were to assume, arguendo, that Petitioner can establish the first prong of Strickland, it is clear that he has not met the second prong since he has not alleged, let alone shown, that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. Even without the statement by co-defendant Whitley, there was substantial evidence upon which to find Petitioner guilty. As such, this ground for habeas relief is denied.

## g. Appellate Counsel

In his eighth ground for relief, Petitioner argues that he was denied effective assistance of appellate counsel when counsel failed to raise the claims raised on PCR, on direct appeal. Specifically, that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness.

The PCR court denied this claim, stating:

I don't see, for all the reasons I've expressed, any deficiency on the part of appellate counsel for failure

25

to complain of or raise any of these issues because all of these issues appear to me, and are demonstrated in the evidence not to give rise to any conclusion of ineffective assistance of counsel, or any other deprivation of due process.

(Resp't's Br., Ex. 36, PCR Hr'g Tr. 29:23-30:4, Jan. 11, 2008.)

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, Evitts at 396. The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

In this case, the New Jersey courts' adjudication of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of Strickland and other Supreme Court holdings. None of the claims that Petitioner raised in his PCR petition were found to be meritorious and in fact, one of the claims appellate counsel raised on direct appeal, the claim regarding merger, was accepted by the Appellate Division and remanded to the trial court for proper merger of the possession charge. State of New Jersey v. Kelly, A-1744-00T4 (July 5, 2002). As such, Petitioner failed to

26

meet the first prong.

Even if the Court were to assume arguendo that Petitioner had met the first prong of <u>Strickland</u>, Petitioner failed to show any prejudice as a result of the alleged ineffectiveness. Therefore, he does not meet the requirements for an ineffective assistance of appellate counsel claim and this ground is denied. <u>See</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

## h. Cumulative Errors

In Ground Ten of his petition, Petitioner argues that the cumulative effect of trial counsel's many deficiencies deprived him of effective assistance.

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>See</u> <u>Hein v. Sullivan</u>, 601 F.3d 897, 917 (9th Cir.2010) (relying on <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). <u>See</u> <u>also</u> <u>Fahy v. Horn</u>, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not

entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

Petitioner raised his cumulative error claim in his state PCR proceedings. Because the PCR court found no merit to any of Petitioner's claims for post-conviction relief, there is likewise no basis or merit for habeas relief based upon an alleged accumulation of errors which did not exist.

## 2. Accomplice Charges

In his second ground for relief, Petitioner argues that his due process rights were violated when the state elected to try Petitioner as an accomplice to a first degree murder, when the co-defendants, who were the principals, pled guilty to aggravated manslaughter. Based on the arguments made by Petitioner in support of this claim, it is not clear precisely what he is challenging.

To the extent he is challenging charges brought against him in the indictment, that argument is without merit. Generally, deficiencies in state grand jury proceedings are not grounds for relief under 2254. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). This conclusion flows from United States v. Mechanik, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), in which the Supreme Court held that a violation of Fed.R.Crim.P. 6(d) (which governs who may be present while the grand jury is in session, deliberating, or voting), discovered only at trial, did not

justify relief after the petit jury had rendered its verdict.

> [T]he petit jury's subsequent guilty verdict means not
> only that there was probable cause to believe that the
> defendants were guilty as charged, but also that they are
> in fact guilty as charged beyond a reasonable doubt.
> Measured by the petit jury's verdict, then, any error in
> the grand jury proceedings connected with the charging
> decision was harmless beyond a reasonable doubt.

Mechanik, 475 U.S. at 70 (footnote omitted); see also United

States v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the

exception of a claim of racial discrimination in the selection of

grand jurors, a petit jury's guilty verdict renders harmless any

prosecutorial misconduct before the indicting grand jury) (citing

Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598

(1986)). Thus, to the extent there were any deficiencies in the

grand jury proceedings, they must be considered harmless.

To the extent Petitioner is challenging the sufficiency of

the jury instructions on accomplice liability, the PCR court

denied that claim, finding that: "After all the testimony was in,

all counsel made arguments, the Court gave instructions. The

Court gave thorough instructions concerning culpability as to

mental state and otherwise under Bielkiewicz in presenting the

accomplice liability instructions." (Resp't's Br., Ex. 36, PCR

Hr'g Tr. 20:1-5, Jan. 11, 2008.) Further, as stated above with

regard to the issue of re-charge, the Appellate Division found:

"In our view, defendant's reliance on State v. Harrington, in

support of this contention, is misplaced. Harrington requires a

jury to be instructed that it can find a principal and an
accomplice guilty of different degrees of the same crime or of
different crimes altogether. Ibid. It is undisputed that the
judge gave that instruction as part of his comprehensive closing
charge." (citations omitted).

The Due Process Clause of the Fourteenth Amendment requires
proof beyond a reasonable doubt of every fact necessary to
constitute the elements of the crime. See In re Winship, 397
U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Waddington v.
Sauausad, 555 U.S. 179, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009),
the Supreme Court outlined the law regarding the
constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or
> deficiency in the instruction, such an error does not
> necessarily constitute a due process violation. Rather,
> the defendant must show both that the instruction was
> ambiguous and that there was " 'a reasonable likelihood'
> that the jury applied the instruction in a way that
> [violated the Constitution]." Estelle, supra, at 72, 502
> U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (quoting Boyde v.
> California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108
> L.Ed.2d 316 ... (1990)). In making this determination,
> the jury instruction "may not be judged in artificial
> isolation, but must be considered in the context of the
> instructions as a whole and the trial record." Estelle,
> supra, at 72.  Because it is not enough that there is
> some "slight possibility" that the jury misapplied the
> instruction, Weeks v. Angelone, 528 U.S. 225, 236, 120
> S.Ct. 727, 145 L.Ed.2d 727 ... (2000), the pertinent
> question "is 'whether the ailing instruction by itself so
> infected the entire trial that the resulting conviction
> violates due process,'" Estelle, supra, at 72, 502 U.S.
> 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (quoting Cupp, supra,
> at 147, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368).

Waddington, 129 S.Ct. at 831-832 (2009) (citations and internal
quotation marks omitted).

The New Jersey courts' adjudication of the claim was not
contrary to, or an unreasonable application of Supreme Court
holdings. As such, this ground for relief is denied.

## 3. Amendment of Indictment

In Ground Nine of the petition, Petitioner argues that he
was deprived of his constitutional rights when the trial court
changed the charging terms of the indictment without notice.
Specifically, Petitioner argues that when the Court removed the
language "by their own conduct" from the indictment, without
sending the matter back to the grand jury, it violated his
rights.

Petitioner raised this argument in his PCR petition and in
denying this ground, the PCR court stated:

> It is true that the prosecutor moved to amend the
> indictment prior to opening, as I recall, prior to jury
> selection, I believe, to eliminate the words "by his own
> hand." And the Court granted that. I don't recall there
> was any real contest about it. It appeared to be
> appropriate, and it was appropriate, and avoided
> confusion for the jury because the State's theory was a
> vicarious liability theory. It did not require that the
> gunfire of a particular individual be the killing shots,
> and that participation by all of them would make them
> culpable if they had the appropriate state of mind. That
> instruction was given to the jury concerning state of
> mind going to culpability as part of the overall lesser
> included accomplice liability instruction.

(Resp't's Br., Ex. 36, PCR Hr'g Tr. 20:6-20, Jan. 11, 2008.)

There is no Fifth Amendment right to indictment by a grand

31

jury in state court criminal proceedings.  <u>Albright v. Oliver</u>,
510 U.S. 266, 272 (1994) (citing <u>Hurtado v. California</u>, 110 U.S.
516 (1884)).  Nevertheless, charging instruments must meet
certain due process standards.  The sufficiency of a charging
instrument is measured by two criteria: "first, whether [it]
contains the elements of the offense intended to be charged, and
sufficiently apprises the defendant of what he must be prepared
to meet, and, secondly, in case any other proceedings are taken
against him for a similar offense whether the record shows with
accuracy to what extent he may plead a former acquittal or
conviction."  <u>Russell v. United States</u>, 369 U.S. 749, 763-64
(1962) (internal citations omitted).

> In determining whether the notice in an indictment is
> sufficient to afford a defendant due process, the
> question is whether under the circumstances there was
> reasonable notice and information of the specific charge
> against him and a fair hearing in open court.  <u>Paterno v.
> Lyons</u>, 334 U.S. 314, 320, 68 S.Ct. 1044, 1047, 92 L.Ed.
> 1409 (1948).  The indictment must be read as a whole.
> <u>Wojtycha v. Hopkins</u>, 517 F.2d 420 (3d Cir. 1975).

<u>Bibby v. Tard</u>, 741 F.2d 26, 29 (3d Cir. 1984).

Here, Petitioner had notice of the specific nature of the
type of criminal offense that he was alleged to have intended.
The charging instrument did not deprive Petitioner of his right
to due process.  The change made to the indictment, prior to
trial, was minor and did not alter the charges against
Petitioner.  Petitioner has not demonstrated that the actions of

32

the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petitioner is not entitled to relief on this claim.

## 4. Sentence

In his final ground, Petitioner argues that the sentence imposed on him is contrary to the clearly established federal precedent set forth in Blakely v. Washington, 542 U.S. 296 (2004.)

Petitioner raised his sentencing claim before the PCR court, which denied his request, stating:

> The matter is not a matter that was in the pipeline during the Natale ruling by the Supreme Court, and does not appear to be a case in which the sentencing should be revisited. The sentencing appears to this Court to be totally appropriate in the circumstances.
>
> Therefore, at this time, the sentence itself will stand. It was reviewed by the Appellate Court and it was held not to be excessive. It was held to be a proper sentence. And that issue has already been addressed.

(Resp't's Br., Ex. 36, PCR Hr'g Tr. 30:5-15, Jan. 11, 2008.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or

33

enhanced by indigencies." See Grecco v. O'Lone, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984). See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), pursuant to the Fourteenth Amendment right to due process, coupled with the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted). More specifically, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose

solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303 (citations omitted). Most recently, in <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

In <u>State v. Natale</u>, 878 A.2d 724 (N.J. 2005), the Supreme Court of New Jersey evaluated the constitutionality of the New Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term. Accordingly, the "statutory maximum" for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive sentence.

<u>Natale</u>, 878 A.2d at 739.  Because the Code's system allowed for sentencing beyond the statutory maximum presumptive term, the Supreme Court of New Jersey found the state sentencing system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, e.g ., ten years for a second-degree offense."  <u>Natale</u>, 878 A.2d at 741 (citation omitted).  The Supreme Court of New Jersey held that the rule it announced in

<u>Natale</u> was applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision, August 2, 2005. <u>Natale</u>, 878 A.2d at 745. Petitioner had already concluded his direct appeals by the date of the <u>Natale</u> decision; thus, the <u>Natale</u> decision did not entitle him to relief, as a matter of state law.

Similarly, the Court of Appeals for the Third Circuit generally has held that the rules announced in the <u>Apprendi</u> line of cases are not applicable retroactively to cases on federal collateral review. <u>See generally</u> <u>In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005)(finding that the decision of the Supreme Court in <u>Booker</u> does not apply retroactively to cases on collateral review); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir. 2003) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review); <u>In re Turner</u>, 267 F.3d 225 (3d Cir. 2001) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review).

Here, whether or not the sentence was imposed in violation of the rules announced in the <u>Apprendi</u>/<u>Natale</u> line of cases, Petitioner is not entitled to relief in this federal collateral proceeding.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be

taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

DATED: 7/19/12

DENNIS M. CAVANAUGH
United States District Judge

37